Cheves, J.
delivered the opinion of the Court.
On the part of the plaintiffs it was contended on the first ground, that proof of publication in the presence of three or more credible witnesses was indispensable; that the evidence did not af *340 ford this proof: that the proof was not satislactory as to any of the witnesses, but that clearly ^ ^ Platt there was no evidence ; that the teshimself must have counterfeited the names of the witnesses. That the will being written on two sheets of paper, and the testator’s name subscribed but to one, there was not a sufficient signing under the statute.
The defendant contended that the will was in all respects well executed under the statute, and that it was proved to be so; that when subscribing witnesses deny their signatures, other proof may be adduced, and will be sufficient; that proof of their handwriting is good evidence to supply this deficiency; that the proof of the handwriting of the Breakers is indisputable, and that the handwriting of Platt had been sufficiently proved; that the suggestion, that the testator had himself counterfeited the signatures of the witnesses, was mere conjecture, and in itself altogether incredible.
There was no question of fraud in the case. The only question was, whether the will was executed according to the provisions of the statute of frauds, so as to pass the lands ? The law on this subject is free of any difficulty. Where subscribing witnesses cannot be produced, or where, when produced, they deny their Signatures, or otherwise fail to prove the due execution of the will, circumstantial evidence may be adduced to supply this deficiency. Of *341 this description of evidence, proof of the handwriting of the subscribing witnesses is the most _. ° ° # direct and usual. It would be of terrible consequence if such testimony were not admissible, for how often and how easily might witnesses be tampered with to deny their own attestation ? It will not follow, that proof of the handwriting of the subscribing witnesses will be conclusive evidence of the validity of the will. Attention must always be paid to the distinction between what shall be deemed a literal compliance with the provisions of the statute, and what shall be a sufficient proof to rebut any imputation of fraud. (Austin v. Willis, Buller, 264, Pike v. Baderming, 2 Stra. 1096. Alexander v. Clayton, 4 Burr, 2224. Longchamp v. Fish, 2 New Rep. 415. Lowe v. Jolliffe, 1 Blac. Rep. 365. Croft v. Pawlet, 2 Stra. 1109. Hands v. James, 2 Comyns’ Rep. 530.) Some proof of publication, as was argued by the plaintiff’s counsel, is necessary. But in such cases publication may be presumed, and it is a question for the Jury, whether, under the circumstances of the case, it is probable all the formalities of the statute have been complied with. (Croft v. Pawlet, and Hands v. James, supra; also Phillips on Evidence, 363, 383.)
permit hi been determined XuhLthá“th¡ sisíeveryS1!
It has never been determined, I believe, that where the will is written on several sheets of paper, the testator must sign all of them. The authority relied upon by the plaintiff’s counsel, (6 Cruise’s Digest, 51, Sec. 12,) is not supported *342 by the authority cited, nor, I believe, by any other. The position laid down by this writer is, M want of signing all the sheets of a will cannot be supplied; so that, although the devisor intend to sign, but becomes incapable of doing it by sickness, such a will cannot take effect and he cites in support of this position only the case of Right v. Price, Doug. 241. In that case the will was written on five sheets of paper; the testator set his mark to the two first, but was too weak to sign the others. Lord Mansfield says, “ this will was not duly executed; for when the testator signed the two first sheets he had an intention of signing the other sheets, but was not able; he therefore did not mean the signature of the two first sheets as a signature of the whole will,” and evidently rests the question upon the intention of the testator. Cruise himself probably did not mean to be understood in the sense contended for, because in the preceding page but one, (p. 49, Sec. 7,) he says, “ where a will is written on several sheets of paper, it is the usual practice for the testator to sign each of them,” and it is certainly very proper, though it is not indispensable. I have said so much on this point, lest in showing its inapplicability, as I shall presently do, to this case, it might be considered as a tacit admission of the correctness of the position. In the case before us, both sheets of the will were signed by the testator according to the received and unquestioned construction of the *343 statute. The will is in his own handwriting, and on the first sheet begins in the usual form, ■ t “ The will of Benjamin Paul Williams,” <fec. or words to that effect, which is a sufficient signing within the statute, and he has in the usual form subscribed the second sheet.
There is, then, no point of law in the case, and the only question is, whether the execution of the will in the presence of three witnesses has been, merely as a question of evidence, sufficiently proved ? The simplest way of considering this question will be to proceed with the witnesses successively. Jacob Brealcer swears that, though he has no recollection of having witnessed a will of testator’s, yet he believes his name to be of his handwriting, and that he must have signed it under the impression that it was some other instrument. It was not necessary he should have witnessed it under the impression it was a will, nor is it necessary he should recollect the publication of the instrument, for if he were dead, or had denied his handwriting, on proof of his handwriting it might be presumed. If he had denied his handwriting, the testimony of Mr. Deas, and particularly of Mr. Middleton Smith, or either of them, would have been sufficient to have sustained the verdict on that point.
Lewis F. Breaker does not positively deny his name to be of his hand-writing, but he doubts it, because he has no recollection of having witnessed any instrument which was executed by the *344 testator; and because at the time of the date of the will his signature differed from that which' appears to the will; he would otherwise believe his name to the will to be of his hand-writing. Now I hold it not to be necessary that a subscribing witness should recollect the time and occasion when he subscribed the instrument as witness- It is enough if he recognizes his handwriting, and is perfectly assured in his own i that he never subscribed an instrument as & w^negs without having seen it executed or acknowledged as the nature of the act requires; , none but an idiot or a villain can be con- . ceived capable of such an act of folly or wickedness, as to subscribe an instrument as a witness when he has not seen it executed or heard it acknowledged. We have during the present ° • # • « i • decided the principle on which this point turns in one case, (Haig v. Newton,) and refused ^ ^ ^ y to hear argument on it in another. (Sharp v. Bingley.) We decided in these cases that the' testimony of a witness who swore positively from written memoranda, though they did not recall to his memory a recollection of the facts, was admissible; and we were further of opinion that such testimony was better evidence than an adventurous and unaided recollection. As to the other difficulty of the witness, it removes itself, ft only proves that he did not subscribe the instrument at the time it was dated; for it is physically impossible that in 1804 the testator, or jBingleAt.) 00/ *345 any body else, could have counterfeited or imítated a hand which had no existence until some • • _ . . fame m 1805, But were it not for these two orcumstances, which ought to have no weight, this • witness would believe his name to the will to be in his handwriting, for he says, “ if it had been cut out of the will, so as to separate it from these circumstances, he would have thought it was his handwriting.” I then think the testimony of this witness himself would have authorized the verdict of the Jury, as it regards him. But the testimony of the witnesses already mentioned proves satisfactorily his handwriting; I therefore think, as it regards Jacob and Lewis Breaker, the verdict ought to stand. But I have come to a different conclusion as to Platt. He admits that his name is in a handwriting like his, but this in itself is no admission that it is identical, and he couples it with a positive and emphatic declaration that it is not his handwriting. There is no other testimony in the case which speaks of this fact except the probate of the will by the Ordinary, the declarations of Jacob Breaker, as testified by Keckley, the testimony of Mr. Hume, that the Ordinary propounded to Jacob Breaker the question, whether the other witnesses subscribed the will, &c., and the impression of Keckley, th at the testator told him the two Breakers and Platt were the witnesses to his will. The declarations at any other time, whether on oath or otherwise, of a witness who is sworn in a cquse, cannot be, *346 evidence but to affect his credibility, either to sustain or impeach it. Now Jacob Breaker has said nothing at all on the fact of Platt's hand-except that he does not know it, and his credibility on that point is out of the question, and the testimony irrelevant. I confess it is very extraordinary that Jacob Breaker should not know the handwriting of one so nearly connected with him in the charities of life as his sister’s hus-' band, who had stood in that relation to him for a number of years, with whom he had transacted business, and from whom he had taken receipts; who lived in the same neighbourhood as himself for some years, and sometimes in his house; with whom he was in habits of brotherly intercourse while they were together, and probably in habits of correspondence when they were separated. T say it is to me extraordinary, and almost incredible, that he should not have known Platt's handwriting; but he swears he does not There is, then, no proof of Platt's signature but his own recognition of its resemblance of his handwriting, of which I have already spoken, and the declarations of the testator, according to the impression of Major Keckley, that Platt was one of the witnesses to his will. This last circumstance is in the nature of circumstantial evidence to prove the fact, but it is so vaguely recollected that it must be considered as very slight proof, and if one ground of objection to the will can be conceived to be at all credible, viz. that the tes *347 tator had counterfeited the signatures of the persons who appear on the will as witnesses, it * A J . . would be no proof at all. I do not consider it, however, in that light, but I think it not enough to have authorized the verdict of the Jury. We have reason to believe that better testimony could have been produced. We are' obliged to suppose, until the contrary shall be made to appear, that evidence of this witness’s handwriting, if it be his, was attainable. This testimony is never dispensed with in analogous cases when it is attainable. (Phillips, 362, 363, 364. Roberts on Wills, 188. Bishop v. Burton, 2 Comyn's Rep. 614, and cases cited supra.) And when we consider that the object of the statute was not to require that degree of evidence which may satisfy the mind in a particular case, but that degree of evidence which would have a general operation in the prevention of frauds, there is reason for as close an adherence to its provisions as shall be conveniently practicable. I incline to think, therefore, until it be shown to be unattainable, proof of the handwriting of Platt ought to be required. But whether this shall be deemed indispensable or not, I think it is at least fit that the proof should be sent to another Jury, that it may be distinctly submitted to them to consider whether the evidence on this point proves the due execution of the will under the statute, separated in their minds from the question, on which there can be no doubt, whether this instru *348 ment was bona fide executed by the testator as his will?
saíy’that should recollect the time and ocsubscribedthe strument, ifherever subscribed cognises his handwriting, and isassured that he nepropel ledgment by the party, &c.
c¡dedhashieenth1i Court, that where they”]kí íot“ecall the facts to the‘evidence was good, and better than adventurous and unaided recollection.
Prioleau and Richardson, for the motion.
T. Parker, contra.
_ . . . , itt On the second point it is clear, and has been decided, and is now settled, that the objection comes too late after-verdict. í5o opinion is given on the validity of the objection, if it had been made in time.
On the first ground I am of opinion a new trial ought to be granted, and this is the unanimous opinion of the Court.